IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNION HOME MORTGAGE CORP., | ) |
| Plaintiff, | ) Case No.: 4:21-cv-19 |
| v. | ) Judge: |
| DOMINIK KLINGSHIRN, | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff Union Home Mortgage Corp. ("Union Home"), by counsel, for its Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages against Defendant Dominik Klingshirn ("Klingshirn"), hereby alleges and states as follows:

**PARTIES**

1. Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

2. Klingshirn was previously employed by Union Home as a Loan Officer at its office located in Strongsville, Ohio.

**JURISDICTION AND VENUE**

3. Paragraphs 1-2 are incorporated herein by reference.

4. This is an action seeking injunctive relief and damages against Klingshirn based on violations of his Employee Agreement with Union Home, as well as statutory violations and violations of the common law.

1

5. Union Home is an Ohio corporation with its principal place of business in Strongsville, Cuyahoga County, Ohio.

6. Klingshirn is a resident, and citizen, of Ohio and resides in Mahoning County, Ohio.

7. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1331 because one of Union Home's claims is based on a federal question. Specifically, Union Home has brought a cause of action under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

8. The Court also has supplemental jurisdiction over Union Home's contractual and state law claims pursuant to 28 U.S.C. § 1367.

9. Klingshirn's agreement with Union Home (the "Employee Agreement") states that "any claim arising out of or related in any way to the Employee's employment or termination of that employment, including claims arising under this Agreement, shall be filed in a state or federal court in Ohio." Employment Agreement, § 16. A true and accurate copy of the Employee Agreement is attached hereto as Exhibit A.

10. The Court has jurisdiction to hear this case and venue is proper in this Court.

11. The choice of law provision in Klingshirn's Employee Agreement identifies Ohio law as governing the contractual claims at issue in this matter.

## FACTUAL BACKGROUND

### Klingshirn's Employment with and Contractual Obligations to Union Home

12. Paragraphs 1-11 are incorporated herein by reference.

13. On December 1, 2020, Klingshirn and Union Home entered into the Employee Agreement, pursuant to which Klingshirn would serve as a Loan Officer for Union Home at its Strongsville, Ohio office and pursuant to which Klingshirn received a bonus of $1,500.

2

14. As a Loan Officer, Klingshirn acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources.

15. As a Loan Officer, Klingshirn was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

16. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its Loan Officers.

17. In the Employee Agreement, Klingshirn agreed as follows:

> Employee agrees that he/she will not become employed in the same or similar capacity as he/she was employed with the Company by a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and **January 7, 2022**; the "Restricted Area" shall mean a one hundred (100) mile radius from any branch office of the Company to which Employee was assigned during the Restricted Period, but excluding any state in which Employee is not legally able to originate or broker mortgages; and a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage banking or brokering business.

(Ex. A, ¶6).

18. Klingshirn agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer any of Union Home's Confidential Information. (*Id.* at ¶9).

19. Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Klingshirn] or known by [Klingshirn] as a result of his . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, prospective customers, referral sources, pipelines, customer relationship management databases…" among other things. (*Id.*).

3

20. Klingshirn agreed, through the Employment Agreement, that, until January 7, 2023 (one year after the end of the Restricted Period) he would not "directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of [Union Home]: (i) with whom [Klingshirn] had contact in the one (1) year preceding the termination of [Klingshirn's] employment with [Union Home]; or (ii) about whom [Klingshirn] obtained or had access to Confidential Information in conjunction with [his] employment by [Union Home]." (*Id.* at ¶ 7).

21. Klingshirn also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically "consent[ed] to the issuance of a restraining order and/or an injunction." (*Id.* at ¶15).

22. Klingshirn also agreed to "devote [his] best efforts to such full time employment as long as it shall continue." (*Id.* at ¶1).

23. Further, Klingshirn agreed that he "shall be liable for any attorneys' fees expended by [Union Home] to enforce [the Employee Agreement]." (*Id.* at ¶15).

24. Klingshirn was a trusted employee of Union Home, who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

25. The Employee Agreement is a binding and enforceable contract between Union Home and Klingshirn.

26. Union Home performed its material obligations under the Employee Agreement.

27. Klingshirn owed and continues to owe legal and contractual obligations to Union Home pursuant to the Employee Agreement.

**Klingshirn Resigns from Union Home and Immediately Begins Competing**

28. On or about December 28, 2020, Klingshirn resigned from his position as a Loan Officer with Union Home.

29. Upon his resignation, Klingshirn immediately went to work for CrossCountry Mortgage, LLC ("CrossCountry") in the Restricted Area. Klingshirn continues to service clients in and around Cleveland, Ohio.

30. CrossCountry is a direct competitor of Union Home that competes with Union Home in and around Cleveland, Ohio, among other places.

31. Klingshirn's NMLS listing states he is currently employed as a loan originator.

32. Klingshirn's employment with CrossCountry as a loan originator is in the same or similar capacity as his prior work for Union Home.

33. Klingshirn is now competing with Union Home in the same market in which he worked for Union Home and clearly within one hundred miles of the Union Home office at which he worked.

**Klingshirn Misappropriates and Uses Union Home's Trade Secrets
and Confidential Information on Behalf of a Competitor**

34. Shortly before he resigned from Union Home, Klingshirn sent himself more than 20 emails from his Union Home email address to his personal email address, many of which contained multiple attached documents and zipped files that included Union Home proprietary business and confidential information. The customer information that Klingshirn sent to himself included multiple spreadsheets with Union Home customer information, as well as Union Home proprietary business information.

35. Klingshirn's multiple emails and attachments he sent himself the day of his resignation contained information regarding customers such as contact information, current debts,

loan amounts, interest rates, loan purposes, loan type, and other personal information for the Union Home customers. Klingshirn also appeared to email himself information for pending and prospective loan applications initiated while at Union Home. This information is proprietary, contains trade secrets, and is certainly not publicly available. Rather, Klingshirn purposely sent himself proprietary information that was confidentially gathered, assembled, and stored in Union Home's secure computer system.

36. This is precisely the type of confidential and proprietary information Klingshirn would need to facilitate the transfer of Union Home customers and prospective customers to CrossCountry, and which Union Home expends resources and implements training to protect.

**COUNT I: VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *et seq.***

37. Paragraphs 1-36 are incorporated herein by reference.

38. Union Home owns trade secrets and confidential business information that derives independent economic value, actual or potential, from not being generally known or ascertainable except through proper means.

39. Union Home takes and has taken reasonable measures to keep such information secret by, among other things, requiring employees to sign confidentiality agreements, password protecting its electronic resources, maintaining policies dictating strict information security, and training employees on the importance of information security.

40. Union Home's trade secrets are related to, among other things, customers, prospective customers, and referral sources.

41. "Customer lists have been held to constitute trade secrets[.]" provided that the list "contain[s] information not generally known to or readily ascertainable by the public." *Salemi v. Cleveland Metroparks*, 49 N.E.3d 1296, 1302 (Ohio 2016).

42. Union Home operates in many states, the customers and prospective customers with whom Klingshirn interacted, and concerning whom he improperly sent himself information, are located in Ohio as well as in other states and therefore the improper use or disclosure of this information would cause injury to Union Home in Ohio and in other states.

43. Klingshirn has acquired, disclosed, and/or used Union Home's trade secrets via improper means and without Union Home's permission and has done so willfully.

44. Union Home has no adequate remedy at law to stop the damage Klingshirn has caused and will continue to cause by his unlawful conduct.

45. Unless Klingshirn is enjoined, this misconduct will continue, and Union Home will continue to suffer losses, including the retention, disclosure, and impermissible use of its confidential information and trade secrets, and loss of customers, future revenue, and goodwill.

**COUNT II:  VIOLATION OF OHIO UNIFORM TRADE SECRETS ACT, OHIO REV. CODE § 1333.61 *et seq.***

46. Paragraphs 1-45 are incorporated herein by reference.

47. Union Home owns trade secrets and confidential information that derives independent economic value, actual or potential, from not being generally known or ascertainable except through proper means.

48. Union Home's trade secrets are related to, among other things, customers, prospective customers, and referral sources.

49. "Customer lists have been held to constitute trade secrets[.]" provided that the list "contain[s] information not generally known to or readily ascertainable by the public." *Salemi v. Cleveland Metroparks*, 49 N.E.3d 1296, 1302 (Ohio 2016).

50. Klingshirn acquired Union Home's trade secrets and confidential information through his employment at Union Home.

7

51. Klingshirn has disclosed and/or used Union Home's trade secrets and confidential information without authorization.

52. Union Home has no adequate remedy at law to stop the damage Klingshirn has caused and will continue to cause by his unlawful conduct.

53. Unless Klingshirn is enjoined, this misconduct will continue, and Union Home will continue to suffer losses, including the retention, disclosure, and impermissible use of its confidential information and trade secrets, and loss of customers, future revenue, and goodwill.

## COUNT III: BREACH OF COVENANT NOT TO COMPETE

54. Paragraphs 1-53 are incorporated herein by reference.

55. Klingshirn's employment with CrossCountry in the same or similar capacity and in the same market is a breach of the covenant not to compete in his Employee Agreement with Union Home.

56. Klingshirn's breach of the covenant not to compete in the Employee Agreement has caused and will continue to cause immediate and irreparable injury, loss, and damage to Union Home in an amount that cannot be precisely calculated.

## COUNT IV: BREACH OF NON-SOLICITATION COVENANT

57. Paragraphs 1-56 are incorporated herein by reference.

58. Pursuant to the Employment Agreement, Klingshirn is restricted, until January 7, 2023, from soliciting any customers or identified prospective customers with whom he had contact from December 28, 2019-December 28, 2020 while working for Union Home.

59. Nevertheless, immediately prior to his resignation from Union Home and the initiation of his employment with Union Home's competitor, CrossCountry, Klingshirn sent himself information regarding such customers and identified prospective customers.

60. There is no reason for Klingshirn to send himself this information other than to improperly solicit or divert these customers and identified prospective customers from Union Home to CrossCountry.

61. Therefore, upon information and belief, Klingshirn has or, if not enjoined from doing so, will improperly solicit or divert or attempt to solicit or divert Union Home customers or identified prospective customers to CrossCountry.

62. The breaches by Klingshirn of his non-solicitation obligations pursuant to the Employee Agreement have caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result in immediate and irreparable injury, loss, and damage to Union Home.

### COUNT V: BREACH OF CONFIDENTIALITY COVENANT

63. Paragraphs 1-62 are incorporated herein by reference.

64. Klingshirn has used and/or disclosed confidential, proprietary, and trade secret information relating to customers and prospective customers on behalf of and for the competitive benefit of CrossCountry.

65. Klingshirn's actions breached his contractual confidentiality obligations to Union Home in multiple ways.

66. The breaches by Klingshirn of his confidentiality obligations pursuant to the Employee Agreement have caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result in immediate and irreparable injury, loss, and damage to Union Home.

### COUNT VI: BREACH OF CONTRACTUAL DUTY OF LOYALTY

67. Paragraphs 1-66 are incorporated herein by reference.

68. While employed by Union Home, Klingshirn owed a contractual duty of loyalty to Union Home.

69. Klingshirn's employment with Union Home ended upon his resignation on or about December 28, 2020.

70. Prior to his resignation, Klingshirn forwarded information regarding current and prospective customers from his Union Home email account to his personal email account for use at CrossCountry in violation of his contractual duty of loyalty.

71. Klingshirn's actions breached his contractual duty of loyalty to Union Home.

72. Klingshirn's breaches of his contractual duty of loyalty pursuant to the Employee Agreement have caused injury, loss, and damage to Union Home.

## COUNT VII:  BREACH OF COMMON LAW DUTY OF LOYALTY

73. Paragraphs 1-72 are incorporated herein by reference.

74. While employed by Union Home, Klingshirn owed a common law duty of loyalty to Union Home.

75. Klingshirn's employment with Union Home ended upon his resignation on or about December 28, 2020.

76. Prior to his resignation, Klingshirn forwarded information regarding current and prospective customers from his Union Home email account to his personal email account for use at CrossCountry in violation of his common law duty of loyalty.

77. Klingshirn's actions breached his common law duty of loyalty to Union Home.

78. Klingshirn's breaches of his common law duty of loyalty have caused injury, loss, and damage to Union Home.

**PRAYER FOR RELIEF**

  A. Paragraphs 1-78 are incorporated herein by reference.

  B. As a direct and proximate cause of Klingshirn's conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities, customers, and the misappropriation of its goodwill, trade secrets, and confidential and proprietary information in an amount that cannot be fully, completely, and adequately remedied at law.

  C. In the Employee Agreement, Klingshirn expressly acknowledged and agreed that a breach or violation of the covenants set forth in the Employee Agreement would cause irreparable harm and consented to the issuance of a restraining order and injunctive relief.

  D. Klingshirn has and continues to willfully violate the Employee Agreement and misappropriate Union Home's trade secrets.

  E. Without injunctive relief, Klingshirn will continue to violate his covenants and the law, thereby causing Union Home additional irreparable harm. In contrast, no harm will accrue to Klingshirn by entry of injunctive relief, as Klingshirn never had the right to violate his legal and contractual obligations to Union Home.

  F. A temporary restraining order and further injunctive relief is appropriate because protection and maintenance of Union Home's goodwill, trade secrets, and confidential and proprietary information is a vital and legitimate business concern. In the absence of injunctive relief, it is unlikely that Union Home will have the ability to calculate precisely the extent of business losses associated with Klingshirn's violation of the Employee Agreement.

  G. The public interest will not be harmed if an injunction is granted.

  H. Given Klingshirn's willful and malicious violations of his obligations under the Employee Agreement, any bond required to be posted by Union Home should be *de minimis*.

WHEREFORE, Union Home respectfully requests that the Court grant the following relief:

1. Issue a temporary restraining order, a preliminary injunction, and a permanent injunction against Klingshirn requiring specific performance of the terms and conditions of the Employee Agreements and compliance with the Defend Trade Secrets Act, the Ohio Uniform Trade Secrets Act, and the common law;

2. Enter judgment in favor of Union Home and against Klingshirn for damages Union Home has incurred and continues to incur as a result of Klingshirn's breaches of the Employee Agreement and the law, including actual damages, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees; and

3. Grant all other relief just and proper in the circumstances.

Respectfully submitted,

*/s/ Jason T. Clagg*
Jason T. Clagg (0097303)
(jason.clagg@btlaw.com)
**BARNES & THORNBURG LLP**
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Phone: (260) 423-9440
Fax: (260) 424-8316

and

Paul N. Garinger (0079897)
(paul.garinger@btlaw.com)
**BARNES & THORNBURG LLP**
41 South High Street, Suite 3300
Columbus, OH 43215
Phone: (614) 628-0096
Fax: (614) 628-1433

ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I, Phil Buscemi, the Vice President Consumer Direct for Union Home Mortgage Corp., verify under penalties of perjury that the foregoing facts and allegations are true and accurate to the best of my knowledge and belief.

Dated: January 5, 2021

_____
Phil Buscemi